Sue M. Grider et al. v. Driver.

## Sue M. Grider et al. v. Driver.

1. Estoppel: *Against claim for improvements on land.*
   Where a party knows, or ought from the circumstances to know, that one who claims his land under a fraudulent purchase, is in possession and making valuable improvements upon it, and makes no objection nor asserts his rights within a reasonable time, he can not in a suit in equity for the land and rents avoid an allowance for the value of the improvements not exceeding the rents.

2. Application of Purchase Money: *Duty of purchaser to see to.*
   A purchaser from a trustee who knows that the trustee is committing a breach of trust in making the sale, is a party to the breach and is bound to see to the application of the purchase money.

3. Improvements: *Rents on, when made by occupant on another's land.*
   The occupant of another's land under a void purchase is not chargeable with rents or improvements made by himself, however fraudulent his purchase, except from the time his use and enjoyment of them has compensated him for making them.

APPEAL from *Mississippi* Circuit Court in Chancery. Hon. W. H. Cate, Circuit Judge.

Sue M. Grider et al. v. Driver.

*U. M. & G. B. Rose*, for appellants.

*First*—The court decided that Driver was under no obligation to pay the plaintiff rent upon the improvements made by himself.

In *42 Ark.*, *442*, this court decided that a mortgagee in possession was under no obligation to pay rent on improvements made by him. But there the possession of the mortgagee was rightful. Here the possession was wrongful. The sale was void absolutely; he bought at private sale; there was no appraisement, the order was made in vacation, and without advertisement or notice. He was an intruder and a wrongdoer. He was not entitled to be put in *statu quo*. The rule of *statu quo* is this: The parties are to be placed as nearly as possible in the position they were; but the wrongdoer is not to make a profit from his injustice, nor is the innocent party to sustain any loss by reason of the act avoided. *15 Ark.*, *290*; *17 ib.*, *606*; *20 ib.*, *438*; *25 ib.*, *204*; *36 ib.*, *353*. In the latter case, *the value of the rents on the place as improved* are taken, and the occupant allowed the expenses of putting them in fit condition.

*Second*—The court erred in charging the appellant with improvements made during her minority in excess of the rents. *33 Ark.*, *490*.

*Third*—The plaintiff is charged with the taxes upon the property as improved, when, if the defendant is not charged for the rents on his own improvements, she was only bound for such taxes as would have been imposed upon the land in its unimproved state. *33 Ark.*, *., 10*.

*Fourth*—The plaintiff is charged with the purchase money paid, without any proof that she ever received any benefit therefrom, or that there was any necessity for the sale of the property. *Perry on Trusts*, sec. *800*; *4 Mylne & Cr.*, *437*; *2 Sim. & St.*, *199*; *1 Lead. Cas. in Eq.*, *p. 109*.

Sue M. Grider et al. v. Driver.

*Greer & Adams* for appellants.

The sale to Driver was absolutely void. *Gantt's Dig.,* secs., *3073-4-5, 3067-8, 176-7; 33 Ark., 89; 32 ib., 97.*

A minor has seven years after becoming of age to bring suit for the recovery of land. *31 Ark., 376; 15 Ohio, 195; 10 ib., 134; 5 ib., 252; 17 Wend. (N. Y.), 119; Wait's Ac. & Def. Infancy, sec. 8; 17 Tex., 355; 28 Mich., 184; 52 Miss., 574; 40 Am. Rep., 801; 1 Yerger, 360.*

It was error to allow Driver credit for improvements in excess of the rents. *Jones on Mortg., sec. 127; 18 Ark., 34; 31 ib, 334; 33 Ark., 490; Waterman Trespass, 2 vol., 599; 2 Pick. (Mass.), 505; 15 N. H., 525; 51 Me., 576; 6 Paige (N. Y.), 405; 8 Wheat. (U. S.), 1.*

Nor was Driver entitled to be allowed the purchase money paid, unless he can show that it went to the support of the minor or to pay debts of the ancestor. *33 Ark., 490; 51 Miss., 680; 21 Pick. (Mass.), 106.*

Driver was not entitled to improvements further than as a set-off against rents. *12 Ark., 218; 15 ib., 682; 24 ib., 109; 28 ib., 211; 39 ib., 357-364; 42 Ark., 118-20; 3 Head., 673; 10 Yerg., 478; 1 ib., 361; 12 Heisk., 566; 2 Rand., Va., 6; 1 A. K. Marsh, 246; 4 Bibb (Ky.), 346; 39 Miss., 796; 51 Miss., 680; 3 S. & M., 715; 4 Dana (Ky.), Hawkins v. Beal.*

*H. M. McVeigh* and *O. P. Lyles*, for appellee.

As to the irregular: of the sale and the effects thereof, see *Rodgers v. Wilson, 13 Ark., 507; Bennett v. Owen, ib., 177; Sturdy v. Jackson, 19 Ark., 516.*

The sale of a guardian is presumed to be good. See *Redman v. Anderson, 18 Ark., 449.*

The infant must elect within a reasonable time after he is of age, whether he will affirm or disaffirm his contract made

during his minority; the plaintiff's letter to the defendant Driver was equal in equity to making the sale herself. See *Thompson v. Strickland, 52 Miss., 574.*

If the sale was for her benefit, she is bound by it. See *Lawson v. Lovejoy, 8 Me., '105; Goode v. Harrison, 5 B. & Ald., 147; Richardson v. Bright, 9 Vt., 368; Brown v. Caldwell, 10 Serg. & R., Penn., 114.* See, also, *Wait's Actions and Defences, 138, 139, 141, 142,* and authorities there cited.

It was then a sale for her benefit, and made by her consent; her residence was in sight of the land sold; she saw Mr. Driver making valuable improvements; she made no objection after she became of age. She said not a word from the time she became of age. And we submit that her long *silence* under the circumstances was a ratification of the sale. See *Vaughn v. Parr, 20 Ark., 608–9; 1 Parsons on Contracts, 295; Fetron v. Williams, 40 Ind., 148; Stokes v. Brown, 4 Chand. (Miss), 39; Robertson v. Weeks, 56 Me, 102; Wait's Actions and Defences, p. 61,* and authorities there cited. *Lawson v. Lovejoy, 8 Me., 405; Klein v. Bebee, 6 Conn., 494; 5 Wait's Actions and Defences, 61,* and authorities there cited. *Doe v. Abernathy, 7 Blackf., 442; Clawson v. Doe, 5 Ind., 300.*

The conveyance to Driver having been made at the solicitation and instance of the minor, and the court ordering the sale having jurisdiction of the subject matter, the deeds were not void, but merely voidable, and the sale could have been, and we say in fact was, ratified by her after she came of age. *Miles v. Lingerman, 24 Ind., 387; Wait v. Maxwell, 5 Pick., 217; Hovey v. Hobson, 53 Me., 451; Dennett v. Dennett. 44 N. H., 538; Zouch v. Parsons, 3 Burr., 1794, 1805; Kendell v. Lawrence, 22 Pick., 540; Tucker v. Moreland, 10 Pet., 58.*

The infant must act within a reasonable time, if he would avoid his deed. *4 How. (Del.), 75; 2 Kent Com., 236; 8*

*Ex. Ch., 181; 102 B, 935; 11 Hum., 474; 7 Wait's Ac. & Def., 144.*

Driver's possession was not wrongful, and he had the perfect right to enter; true he bought at private sale, but at that time private sales were common in Arkansas, and the statute was silent as to whether a guardian's sale should be public or private. *Gould's Dig., sec. 181, 182, p. 134, act January, 1855.* By these sections the sale was to be conducted as the court might direct. At that time no appraisement was required. *Gantt's Dig., sec. 3066 to 3077,* was the first appraisement law.

The circuit court had jurisdiction. *Const. 1868, art. 5, sec. 44; Gantt's Dig., sec. 1183; Act March 16, 1871,* and *April 16, 1873.*

In this case the minor stood quietly by and permitted Driver to make improvements without asserting any claim, and he is entitled to the full value of his improvements, nor will he be required to pay rent on them, as they were his own. *Summers v. Howard, 33 Ark., 490.*

OPINION.

BATTLE, J. Sue M. Grider and her husband, W. H. Grider, filed a complaint in equity in the Mississippi circuit court on the 14th day of April, 1882, alleging in substance as follows:

That she, Sue M. Grider, was born in June, 1857; that her father died in 1862, leaving her a large estate, consisting of personalty and real estate; that among the lands inherited by her was the northwest quarter of section 18, in township 12 north, and in range 11 east. That this tract, being very fertile and protected by a levee from overflow, was worth, on the 17th day of March, 1874, $100 per acre. That in 1869 the defendant, James D. Driver, bought

the plantation in rear of the tract described; that when he purchased it, he thought the plantation included the land in controversy, and when he discovered it did not, he was much dissatisfied with his purchase, and resolved to obtain the described tract. That, at the time, W. A. Erwin, the step-father of Sue M., pretended to be her guardian. That Erwin was an exceedingly dissipated man with no business qualifications. That with a view to getting title to this tract, Driver induced Erwin to present a petition to the circuit judge, in the vacation of court, reciting therein that Sue M.'s father had died leaving considerable wild lands; that the taxes were burdensome; that the tract described was wild, of little value, and remote from the river; that Driver would give more for it than any one else, and that its sale was necessary to raise money for the education of Sue M.; and that all these statements Driver and Erwin knew to be false. That they presented the petition to the circuit judge, and procured from him, in the vacation of court, an order for the sale of the land at private sale, and that eighty acres of the land were accordingly sold, at private sale, to Driver for $800 in cash, and his note for $800 more due on the 1st day of January, 1875. That thereupon Driver took possession of the land sold, and caused the lines thereof to be so run as to include all the cleared land on the tract.

That, afterwards, on the 5th day of September, 1874, Driver induced Erwin to present to the circuit judge, in vacation, another petition for the sale of the remaining eighty acres of said tract; that the second petition contained the same false allegations as the first. That an order was made by the judge, in vacation, directing a private sale; and that the remaining eighty acres was accordingly sold to Driver for $1,000, when it was worth $8,000, at private sale, without advertisement or appraisement. That Driver

derived and received rents from this tract of land of the value of $8,400. And plaintiffs asked that the conveyances to Driver be set aside, for an account of rents and profits, and for other relief.

The defendant, Driver, answered, denying that the land, when bought by him, was worth $100 an acre, and stated that $20 an acre was its full value; denied that he thought it was included in the purchase of his plantation; that he induced Erwin to present a petition for the sale of the land, or that he had any collusion with him; and that Erwin was an habitual drunkard, but says he was a shrewd business man. He states that when he purchased the land from Erwin only thirteen or fourteen acres of it were cleared, and the remainder was covered with a dense forest and cane, and that it cost $30 an acre to clear it, which he paid. That this tract was and has not been worth as much rent as stated by plaintiffs. He stated that he took possession immediately after his purchase and has held it at all times since; that he has paid out for purchase money, taxes and improvements, including interest, $8,360.19, which he asked to be refunded to him in the event the sales are set aside; that plaintiffs, knowing of his claim to the lands and standing by while he improved the lands, without objection, are estopped from setting up any claim thereto; and pleaded the statute of limitations.

On the 19th day of May, 1883, the court below, after hearing the evidence introduced by both parties, rendered a final decree herein, setting aside and declairing void the sales by Erwin to Driver, and referred the cause to a master to state an account, instructing him to charge plaintiffs with the present value of the improvements placed upon the land by defendant, with the taxes paid by him on the land as unimproved, with interest, and with the purchase money paid by him; and to charge the defendant with the

rent of so much of the land as was improved when he took possession, with interest. And the master stated the account substantially as follows:

Due from Driver—

| | | |
|---|---:|---:|
| Rent on 15 acres for ten years | $ 900 | 00 |
| Interest thereon | 295 | 00 |
| Rent on 75 acres for two years | 900 | 00 |
| Interest thereon | 108 | 00 |
| Total | $2,203 | 00 |

Due to Driver—

| | | |
|---|---:|---:|
| Purchase money | $2,600 | 00 |
| Interest thereon | 1,533 | 65 |
| Clearing 130 acres | 3,250 | 00 |
| Taxes | 293 | 17 |
| Other improvements | 475 | 00 |
| Total | $8,151 | 82 |
| Less amount due plaintiffs | 2,203 | 00 |
| Balance due Driver | $5,942 | 82 |

The plaintiffs excepted to the report of the master and the account stated by him, because there were sixty acres cleared land when Driver took possession, and not fifteen as reported; because they are allowed rent on only seventy-five acres from the commencement of the suit, when one hundred and thirty were cleared; because the account charges them with the purchase money paid by Driver, when it is not shown that Sue M. Grider or the estate of her father derived any benefit therefrom; because plaintiffs are charged with improvements in excess of the rents; and because the account fails to charge defendant with the rents on the land as improved.

Defendant excepted to the allowance to plaintiffs of rent for the seventy-five acres, and to the insufficiency of the allowance to defendant for the improvements.

On the 22d day of July, 1884, the court below heard the exceptions to the master's report and the account stated by

Sue M. Grider et al. v. Driver.

him, and adjudged that plaintiffs were entitled to rent on eighteen acres, instead of fifteen, as reported by the master, at the rate of $6 an acre for ten years, and interest thereon; that they should not be charged with taxes on defendant's improvements, and that $100 should be deducted from the amount of taxes allowed defendant as a credit on account of taxes paid on such improvements for the years 1882 and 1883; and that the charge for rent on seventy-five acres and interest thereon made in the account stated be stricken out, because this seventy-five acres was cleared by Driver after his purchase; and that there was due Driver $6,617.22; and ordered the master to reform and restate the account according to these rulings of the court, which he did; and the account being amended was confirmed. And the court decreed that defendant be allowed to remain in possession of the land until the amount so adjudged to be due him was paid; and that plaintiffs have and recover of the defendant the costs. Plaintiffs appealed.

The defendant having failed to appeal we can only notice such proceedings and so much of the decree of the court below as appellants insist were erroneous and injurious to them.

*First*—Should appellants be charged with the value of the improvements in excess of the rents? Appellants say that they did not know Driver was in possession of and improving the land in controversy until a short time before the institution of this suit, and therefore should not be charged with such excess.

1. ESTOPPEL: Against claims for improvements on land.

It was proven that Mrs. Grider arrived at the age of eighteen years on the 23d day of May, 1875. The improvements were made after this and some time before the institution of this suit, without objection from or by either of the appellants. A portion of the land was cleared and

susceptible of cultivation at the time of Driver's pretended purchase. They knew, or ought to have known, that they were in possession thereof. This alone ought to have led them to an inquiry into the facts and assertion of their rights. For eight years, however, they did nothing, and Driver remained in possession of and improved the land. They were guilty of the grossest laches. Under these circumstances equity would not allow them "to appropriate to themselves, without satisfaction or indemnification, the improvements of defendant, which, by their silence, they permitted to be made," and have enhanced the value of their property. *Summers v. Howard, 33 Ark., 490; Davidson v. Barclay, 63 Penn. St., 406; Morris v. Terrill, 2 Ran., 6.*

2. APPLI-CA'ION of purchase money.

*Second*—Appellants insist that they should not be charged with the purchase money paid by Driver to Erwin, without any proof that Mrs. Grider ever received any benefit therefrom.

The sales made by Erwin to Driver were unquestionably void. The order of the judge, under which the sales were made, was a nullity. Mrs. Grider was not bound or affected by any act of Erwin in making these sales. He was not vested with authority to represent her in any capacity in selling the land to Driver in the manner he did. In making the sales and placing Driver in possession of the land he violated the trust vested in him as guardian, and Driver knowing the facts, and presumed to know the law, is knowingly a party to the breach of the trust.

Judge Story, in his work on Equity Jurisprudence, says: "The rule in all these cases, that the purchaser or mortgagee is not bound to look to the application of the purchase money, is subject to an obvious exception, that, if the purchaser or mortgagee is knowingly a party to any breach of trust by the sale, or mortgage, it shall afford

him no protection.   One obvious example of this is, where a devisee himself has a right to sell, but he sells to pay his own debt, which is a manifest breach of trust, and the party who concurs in the sale, is aware, or has notice of the fact, that such is its object; for in such a case they are coadjutors in the fraud." *Story's Equity Jurisprudence, sec. 1131 a.*

In the American notes to *Elliott v. Merryman, in White & Tudor's Leading Cases in Equity, vol. 1, p. 109,* it is said: " It may be considered as the prevailing doctrine in the American courts, that a purchaser from a trustee is not bound to see to the application of the purchase money, except where the sale is a breach of trust on the part of the trustee, and the purchaser has, either from the face of the transaction, or otherwise, notice or knowledge of the trustee's violation of duty; but if he has such knowledge or notice as makes him a party or privy to the trustee's misconduct, the property will be affected in his hands with the trusts which previously attached to it."

Driver was, therefore, bound to see to the application of the purchase money he paid Erwin for the land in controversy.   Only a part of this money was shown to have been applied to the use of Mrs. Grider.   Having failed to perform the duty imposed on him by law, appellants are not bound to return to him the remainder of the purchase money.   He is only entitled to credit for so much thereof as was applied to the use of Mrs. Grider, and interest thereon from the time of the payment thereof.

*Third*—When Driver made his pretended purchase, there were only eighteen acres of cleared land upon the tract in controversy.   The remainder was wild, unimproved and covered with a dense forest.   He has cleared, inclosed and put into cultivation one hundred and thirty acres of this remainder, since his purchase, and for many

3. IMPROVEMENTS: Rents on.

years has been in possession, enjoying the rents and profits. Shall he be required to pay rent for the land cleared and inclosed by himself? This is an important question and difficult to decide.

In *Summers v. Howard, supra*, the defendant purchased, at a sale made under a void order of a court, three *vacant* lots in the city of Helena, and erected thereon a dwelling house and other improvements. It was held by this court that he was entitled to compensation for his improvements, and should not be charged with the rents and profits of the lots as enhanced by the improvements. Mr. Justice Harrison, in delivering the opinion of the court, said: " A party who is, under the circumstances of the case, entitled to compensation for improvements is only chargeable with such rents and profits as the property would have yielded without the improvements, for if charged with such as arise *exclusively* from the improvements which he has made, he would pay for the use of that which was his own."

In *Jones, McDowell & Co. v. Fletcher, 42 Ark., 442*, the land in controversy was mortgaged by the rightful owners. Rozelle took possession under the mortgagee, and expended a considerable sum of money in making lasting and valuable improvements on the land. He cleared and put into cultivation ninety-eight acres. He built houses and made many other improvements, and thereby enhanced the value of the property. This court held that it was error "to charge Rozelle, or those who claimed under him as a mortgagee in possession, for rents of land put into cultivation by himself at his own cost."

But a state of facts different from those presented in the cases cited is presented here. The lands in controversy were very fertile, and had a rental value in their wild state. Such lands in Mississippi county, as shown by the evi-

dence, could have been leased and rented in a wild state, for the purpose of being cleared and cultivated, for five years, for the clearing and putting the same into a good state of cultivation, and for the inclosing of them, and the building and putting the houses and other improvements thereon usually put on small farms in that county, the use and occupation for the term of five years being a reasonable compensation for such improvements. If cleared, put into a good state of cultivation and improved, as before stated, it would have been worth, according to the evidence, $6 an acre per annum. It is evident, therefore, that the rental value of so much of the lands as was actually cleared and put into cultivation by Driver, in its wild state, for the first five years it was used and cultivated, was the clearing and putting the same into a good state of cultivation and the other improvements mentioned, and thereafter $6 an acre per annum. It must follow, then, he is not entitled to compensation for his improvements in addition to the use and occupation of the land for five years, and that he should be required to pay $6 an acre per annum for the lands cleared by him, after the end of the first five years, for the time he has used and occupied the same exceeding five years. It is true he was entitled to compensation for his improvements, but he received that in the use and occupation of the land for five years. To allow him additional compensation for his improvements, or to hold the land cleared by him, free of rent, after he has been fully compensated for his improvements, by five years' use and occupation thereof, would be unjust and inequitable.

The decree of the court below is therefore reversed in so far as it is inconsistent with this opinion, and in other respects is affirmed; and this cause is remanded, with direc-

tions to the court to refer this cause to a master to state an account between appellant, Sue M. Grider, and appellee ; and to instruct the master to charge Mrs. Grider, in such account, with so much of the purchase money as was applied to her use, with 6 per cent. interest thereon from the date of the payment thereof, and with the taxes paid by Driver, and 6 per cent. interest thereon from the time they were paid; and to credit her with the rent of eighteen acres of land at the rate of $6 an acre per annum for the year 1874, and every year thereafter, down to the time of stating the account, and with 6 per cent. interest on the rent of each year from the end of the year for which it is credited, and with rent for each portion of the land cleared by Driver in each year, for every year after the fifth year in which he cleared or cultivated the same, at the rate of $6 an acre per annum, and with 6 per cent. interest on the rent of each year from the end of the year for which it is credited ; and for other proceedings necessary to the settlement and adjustment of the matters in controversy and the enforcement of the rights of the parties to this action.